UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN MELEIKA,<br><br>  Plaintiff,<br><br>  v.<br><br>BAYONNE POLICE DEPARTMENT, CITY OF BAYONNE, STATE OF NEW JERSEY, HUDSON COUNTY PROSECUTOR'S OFFICE, HUDSON COUNTY COURTHOUSE, and HUDSON COUNTY, NEW JERSEY<br><br>  Defendants. | Civ. No. 17–1958 (KM) (MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Detectives from the Bayonne Police Department arrested Steven Meleika and charged him with possession of marijuana. The police never submitted the evidence for lab testing, and the charges were later dismissed.

Based on that dismissal, Meleika sued, *pro se*, among others, the Bayonne Police Department and the City of Bayonne.[1] Now before the Court

---

[1] This is one of several distinct but somewhat interrelated *pro se* actions filed in this district by Steven Meleika:

  17-cv-1958 Meleika v. Bayonne Police Department

  17-cv-1959 Meleika v. Jersey City Police Department

  17-cv-1960 Meleika v. Hudson County Correctional Center

  17-cv-5759 Meleika v. Jersey City Medical Center

  19-cv-20916 Meleika v. State Of New Jersey (transferred from E.D. Pa.)

Overlapping parties and similar docket numbers have resulted in some confusion. The City of Bayonne or the Bayonne Police Department are listed as defendants in three of Mr. Meleika's complaints: this action, 17-cv-5759, and 19-cv-20916. As noted in a prior opinion, the plaintiff has from time to time filed papers under the wrong docket number, a situation the clerk's office has attempted to correct. (*See* Opinion, 17-cv-1958 DE 25; 17-cv-5759 DE 13).

are the competing motions for summary judgment, pursuant to Fed. R. Civ. P. 56, of defendants the Bayonne Police Department and the City of Bayonne (DE 75)[2] and plaintiff Meleika (DE 83 & DE 90).[3] For the following reasons, the defendants' motion for summary judgment (DE 75) is **GRANTED**; Meleika's motions for summary judgment (DE 83 & DE 90) are **DENIED**.

## I. BACKGROUND

### A. Facts

Few if any facts are in dispute. On April 23, 2015, Detectives Steven Rhodes and Daniel Kaiser of the Bayonne Police Department were on surveillance patrol and noticed Meleika smoking marijuana in a parked car in front of a housing complex. They arrested him and, during a routine search, discovered more marijuana:

> On 04-23-201[5], Detective Kaiser and [Detective Rhodes] were on an unrelated surveillance in the area of 30 East 26th Street[,] the Centerville Gardens Bayonne Housing Complex. While [they] were on [their] unrelated surveillance Detective Kaiser and [Detective Rhodes] detected an odor of burnt marijuana coming from the east end of the parking lot of 30 East 26th Street. [They] observed a male, later identified as Steven Meleika[,] sitting inside of a parked black Nissan[,] . . . and he was smoking marijuana. [They] approached Meleika with [their] badges displayed and verbally identified [them]selves as police officers. [Detective Rhodes] recovered a partially smoked marijuana blunt from Meleika. Detective Kaiser placed Meleika under arrest. [During a] search incidental to arrest, Detective Kaiser recovered a Marlboro cigarette box containing marijuana in a vacuum[-]sealed plastic bag from Meleika's right front pants pocket. [Two other police officers] transported Meleika to headquarters for processing without incident. The vehicle was parked and secured at the scene. The marijuana was marked for identification and submitted into evidence. Detective Kaiser issued Meleika a summons (C-16083)

---

[2]   "DE __" refers to the docket entries in this case.

[3]   Also before the Court is what Meleika describes as a "motion for recusal" but what is, in substance, an untimely notice of appeal. (DE 91). The motion is administratively terminated.

> 39:4-49.1 for drugs in a motor vehicle. [Detective Rhodes] signed a complaint against Meleika for the above listed charge.

(DE 76 Ex. A).

Meleika's account is substantially identical. He testified that on April 23, 2015, he was smoking a blunt (marijuana cigar) in his mother's car at the Centerville Gardens Bayonne Housing Complex. (DE 76 Ex. E at 26:12–23). Detectives Rhodes and Kaiser arrived in the parking lot, smelled that he was smoking marijuana, and blocked his car with their own. (DE 76 Ex. E at 28:22–23 & 34:2–22). The detectives approached Meleika's car, displayed their City of Bayonne Police Department badges, and identified themselves as police officers. (DE 76 Ex. E at 29:1–9). Detective Kaiser asked Meleika to lower his window and step out of the car, and he placed Meleika under arrest. (DE 76 Ex. E at 31:7–11). Detective Kaiser then searched Meleika and found a cigarette pack containing a vacuum-sealed plastic bag of marijuana in Meleika's pants pocket. (DE 76 Ex. E at 36:3–6).

Meleika was transported to police headquarters, where he was processed but never placed in a cell. (DE 76 Ex. E at 37:15–17 & 39:6–7). The officers charged Meleika with possession of marijuana under fifty grams. (DE 39:13-14). Meleika was released, with a summons, around 12:45 a.m. on April 24, 2015. (DE 76 Ex. E at 39:13–20). Meleika did not seek medical treatment for any physical or emotional injuries arising from his arrest. (DE 76 Ex. At 41:8–42: 13).

The Bayonne Police Department never sent to the testing lab the marijuana recovered from Meleika, and on September 20, 2016, the charges against him were dismissed. (DE 76 Ex. E. at 40:9–20 & Ex. F).

### B. Procedural History

Based on the dismissal of the charges against him, Meleika filed this lawsuit on March 22, 2017, alleging "Violation of civil rights, False arrest, False imprisonment, Malic[ious] prosecution, 14 Amendment, 4 Amendment, and

Punitive damages."[4] (DE 1 & DE 76 Ex. E at 50:6–10). In support of these claims, Meleika relies only on the September 27, 2016 letter from the Bayonne Municipal Court that advised him that the charges against him had been dismissed. (DE 76 Ex. E at 40:9–20 & Ex. F).

Meleika's first complaint purported to sue the Bayonne Police Department, the City of Bayonne, and the State of New Jersey. (DE 1). In light of Defendants' motion, on October 5, 2017, I entered an opinion and order (DE 25 & DE 26) dismissing on Eleventh Amendment/sovereign immunity grounds the claims against the State; dismissing the claims against the Bayonne Police Department because it is not an independent entity to be sued; and dismissing, without prejudice and for failure to state a cause of action, the claims against the City of Bayonne. (DE 25). On November 7, 2017, Meleika filed a first amended complaint (DE 27), and the parties exchanged discovery, which included interrogatories and deposition testimony.

On August 27, 2019, despite the absence of a final, appealable order, Meleika filed a notice of appeal with the Court of Appeals for the Third Circuit. (DE 73). The Third Circuit has docketed the appeal as 19-3011. (DE 74). What the "notice" consists of, however, is a demand that judgment be entered in Meleika's favor based on the statute of limitations (Meleika is the plaintiff), and the Sixth Amendment right to a speedy trial "[i]n all criminal prosecutions" (this is a civil case).[5] There is no final, appealable decision disposing of all

---

[4]   The Court and Defendants have interpreted these claims under 28 U.S.C. § 1983 and the New Jersey Civil Rights Act and as claims against the City of Bayonne on a municipal-liability theory.

[5]   Considered as a notice of appeal, this filing would likely be treated as frivolous, and therefore insufficient to divest this Court of jurisdiction:

> There are few circumstances in which a district court may continue to exercise authority over a case after the filing of a notice of appeal, an "event of jurisdictional significance [that] confers jurisdiction on the court of appeals and divests the district court of its control over . . . the case." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58–59 (1982). A district court may proceed if the appeal is patently frivolous, if the notice of appeal relates to a non-appealable order or judgment, or if

issues as to all parties and no indication that an interlocutory appeal would be appropriate. *See* 28 U.S.C. § 1291. I will therefore deal with the outstanding motions filed by Meleika and Defendants.

On September 13, 2019, the Bayonne Police Department[6] and the City of Bayonne moved for summary judgment. (DE 75). On October 16, 2019, Meleika filed his own motion for summary judgment. (DE 83).

While these motions were pending, Meleika, on March 25, 2020, filed a second motion for summary judgment. (DE 90). On the same day, he filed what he called a motion to recuse, but what might be characterized as a (second) notice of appeal.[7] (DE 91).

---

the appeal is taken in bad faith and would result in unwarranted delay. *See United States v. Leppo*, 634 F.2d 101 (3d Cir. 1980) (patently frivolous); *Mondrow v. Fountain House*, 867 F.2d 798 (3d Cir. 1989) (non-appealable order or judgment); *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir.1988) (bad faith).

*United States v. McIntyre*, No. 04-cr-50, 2006 WL 1330202 at *1 (W.D. Pa. May 15, 2006).

If my prediction is incorrect, however, this decision may be treated as an "indicative ruling" and the Court of Appeals may, within its discretion, order a limited remand under Rule 62.1:

Federal Rule of Civil Procedure 62.1 provides that when a motion is made for relief that the district court lacks authority to grant due to a pending appeal, the court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1.

*MZM Constr. Co., Inc. v. N.J. Bldg. Laborers' Statewide Benefit Funds*, No. 18-16328, 2019 WL 3812889 at *6 (D.N.J. Aug. 14, 2019).

[6]   The Bayonne Police Department has already been dismissed as a defendant, because, as a department of the City government, it is not an independent entity that can be sued. (DE 25 at 4). *See* pages 14–15 and note 10, *infra*.

[7]   The "motion to recuse" reads:

The plaintiff apparently has a summary judgment against all the defendants for violating his Sixth amendment right to a speedy trial in the Third Circuit Court of Appeals. For good cause shown, the plaintiff

## II. DISCUSSION

This case is one in which the "district courts have original jurisdiction." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The complaint has been interpreted to assert claims under the federal Civil Rights Act, 28 U.S.C. § 1983, and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2. The federal claims are sufficient to provide an "original jurisdiction" toehold for the state claims under the supplemental jurisdiction statute. *See* 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005).

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt

---

requests the court grant his motion to recuse the case to the U.S. Third Circuit Court of Appeals.

(DE 91). This notice, too, would likely be treated as frivolous. *See* note 5, *supra*.

6

as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Nw. Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

   Meleika appears *pro se*. He has not filed papers in response that conform with the federal or local rules. The court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 U.S. Dist. LEXIS 67320, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party

does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (*quoting Anchorage Assocs.*, 922 F.2d at 175)).

I am nevertheless mindful of the plaintiff's *pro se* status. Where, for example, "the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520–521, (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)). Meleika has made any number of filings in which he has stated his legal and factual positions. I have reviewed and considered them as his opposition to summary judgment and have construed Meleika's pleadings and filings in the liberal spirit of *Haines*.

## B. Civil Rights Violations

Each count of the complaint seeks damages under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983; *see also Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Thus, a claim under § 1983 requires first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The New Jersey Civil Rights Act ("NJCRA") is modeled on § 1983 and is construed in parallel with it. *See, e.g., Ingram v. Twp. of Deptford*, 911 F. Supp.

8

2d 289, 298 (D.N.J. 2012); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). Like Section 1983, the NJCRA grants a cause of action against "a person acting under color of law." N.J. Stat. Ann. § 10:6-2.

### 1. Probable Cause

A threshold issue for Meleika's claims is the question whether the police possessed probable cause authorizing the arrest of Meleika and seizure of his marijuana without a warrant. Meleika alleges that the detectives lacked probable cause and this contention forms the basis of his false-arrest, false-imprisonment, and malicious-prosecution claims.

The Fourth Amendment prohibits "unreasonable searches and seizures."[8] U.S. CONST. amend. IV. A seizure is usually reasonable when it is carried out with a warrant based on probable cause. *Katz v. United States,* 389 U.S. 347, 356–357 (1967). Warrantless searches are presumptively unreasonable, *see id.,* but are permitted under certain circumstances. One such exception to the warrant requirement is a brief "pat-down" search incident to an investigative, reasonable-suspicion *Terry* stop. *See Terry v. Ohio,* 392 U.S. 1 27 (1968); *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000). Another exception is a search incident to a lawful arrest based on probable cause. When a police officer is effecting a lawful arrest, the Fourth Amendment permits the officer to perform a warrantless incidental search of the detainee's person:

> Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks v. United States*, 232 U.S. 383, 392 (1914); *Agnello v. United States*, 269 U.S. 20, 30 (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll v. United States*, []267 U.S.[ 132,] 158 [(1925)], and, to an extent depending on the circumstances of the case, to the place where he is arrested, *Agnello v. United States*, []269 U.S.[ 20,]

---

[8] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *See Baker v. McCollan,* 443 U.S. 137, 142 (1979).

9

>30 [(1925)]; *Marron v. United States*, 275 U.S. 192, 199 (1927);
>*United States v. Rabinowitz*, 339 U.S. 56, 61–62 (1950).

*Preston v. United States*, 376 U.S. 364, 367 (1964); see also *Watley v. Felsman*, No. 16 -2059, 2018 WL 1532953 at *6 (M.D. Pa. Mar. 29, 2018) (citing more recent authorities).

There was surely probable cause to arrest for a marijuana-possession offense. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007) (citing *Draper v. United States*, 358 U.S. 307, 313, 79 S. Ct. 329 (1959)). "It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citing *United States v. Humphries,* 372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."); *United States v. Winters,* 221 F.3d 1039, 1042 (8th Cir. 2000)).

Here, the evidence adduced from Defendants and from Meleika reveals that the detectives smelled the odor of burning marijuana when they pulled into the parking lot. As they approached Meleika's car, they saw him smoking a blunt. These facts, then, demonstrate more than just the "smell of marijuana alone." The officers smelled burning marijuana, and then actually saw Meleika smoking a blunt, confirming the source as well as the identity of the substance being smoked. These "articulable and particularized" facts unquestionably constituted probable cause to arrest Meleika for a drug offense. *See Ramos,* 443 F.3d at 308.

The officers were thus entitled to search Meleika's person incident to that lawful arrest. They did so and found more marijuana in Meleika's pocket. That search incident to arrest did not violate Meleika's Fourth Amendment rights.

A recent case from the U.S. District Court for the Middle District of Pennsylvania, *Watley v. Felsman,* confirms those well-settled principles. Watley, like Meleika here, sued the police based on, *inter alia,* their search of his pockets in connection with an allegedly invalid arrest for traffic offenses. As I have done here, that court found on summary judgment that the arrest was supported by probable cause, and then considered the validity of the search of defendant's person:

> Since the arrest in this case was valid, the search of Watley's pockets by Trooper Nilon was lawful as a search incident to a valid arrest. "An officer may conduct a search incident to arrest without obtaining a warrant." *See United States v. Elmore*, Cr. No. 11-00361-02, 2012 WL 2905195, at *6 (M.D. Pa. July 16, 2012)(citing *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)); *see also Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979)("Under the Fourth and Fourteenth Amendments, an arresting officer may, without a warrant, search a person validly arrested.")(citation omitted). "[T]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Maryland v. King*, 569 U.S. 435, 449 (2013) (quoting *DeFillipo*, 443 U.S. at 35).

*Watley v. Felsman*, No. 16- 2059, 2018 WL 1532953 at *6 (M.D. Pa. Mar. 29, 2018).

Under these facts, the Fourth Amendment did not require the detectives to obtain a warrant to search Meleika. What the officers saw and smelled constituted probable cause for an arrest, and the seizure of marijuana from Meleika's pockets was a valid search incident to arrest.[9]

---

9    Meleika argues that, merely by looking at him, the officers conducted an unreasonable search:

> Seeing, looking in somebody's direction is considered a search I would argue under the Fourth [A]mendment. Just looking in somebody's window, in somebody -- well, it's not in a house, it would be a stronger case looking in somebody's house window. It's a violation of their Fourth [A]mendment right, it's a search. Just, to see, look inside somebody's window. It so happened to happen in a car with a motor vehicle.

11

### 2. False Arrest and False Imprisonment

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir.1988)).

Closely related is the tort of false imprisonment, which may cover the arrestee's subsequent detention. It, too, depends on a lack of probable cause: "[W]here an individual was arrested without probable cause, he 'has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'" *Simpson v. Owner of Dollar Tree Store*, No. 09-6162, 2010 U.S. Dist. LEXIS 88027, 2010 WL 3364200 at *6 (E.D. Pa. Aug. 23, 2010) (quoting *Groman*, 47 F.3d at 636 (3d Cir. 1995) (citing *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988))).

Because the detectives had probable to cause to seize Meleika and his marijuana, *see supra,* there is no genuine issue of material fact that he was neither falsely arrested nor falsely imprisoned. The claims are **DISMISSED**.

### 3. Malicious Prosecution

Under § 1983, a claim of malicious prosecutions requires a plaintiff to show that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the

---

> It could be because when he goes and talks to you and searches, looks in your car, and he's going to -- the search starts, he sees. It could be because he's asking you for driver's license and it's in the seat next to you. It's a search and seizure, Fourth [A]mendment and I would say my case, my argument would be starting with just seeing is a search.

(DE 76 Ex. E at 49:12–50:3). Officers might violate the Fourth Amendment if they violate an expectation of privacy (*e.g.*, trespass on the curtilage of a home) in order to arrive at their vantage point. *See United States v. Dunn*, 480 U.S. 294, 304 (1987). Merely looking at a person or object on a public street, however, does not constitute an unlawful search. *See, e.g., Horton v. California*, 496 U.S. 128, 130 (1990) (seizure of contraband in plain view); *Texas v. Brown*, 460 U.S. 730, 739–40 (1983) (observation of contraband lying on car's front seat).

proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273 , 295–97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)); *see also Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (*en banc*) (adopting elements of the common law tort for purposes of § 1983).

The evidence in the record reveals the absence of two factors: probable cause and malicious intent.

For the reasons discussed *supra*, Detectives Rhodes and Kaiser had probable cause to seize Meleika and the marijuana. It is true that the charges were later dismissed, based on the lack of any laboratory analysis of the substance. That circumstance does not retroactively undermine the officers' possession of probable cause. Probable cause is assessed from the point of view of the officers at the time of the arrest; "The validity of the arrest is not dependent on whether the suspect actually committed any crime, and 'the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant.'" *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). The presence of facts sufficient to establish probable cause, even standing alone, would doom any malicious prosecution claim.

Evidence of malice, too, is lacking. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Robinson v. Jordan*, 804 F. Supp. 2d 203, 210 n.8 (D.N.J. 2011) (quoting *Morales v. Busbee*, 972 F. Supp. 254, 261 (D.N.J. 1997) (citations omitted)).

The record here contains no facts suggesting that the detectives acted with actual malice or with any purpose other than to bring Meleika to justice. The detectives were patrolling the area and conducting unrelated surveillance

when they noticed Meleika smoking marijuana and arrested him for that violation. Meleika was promptly processed after his arrest, and he was released mere hours after the detectives arrested him. Meleika believes that by looking in his direction, the officers acted unreasonably. That is incorrect, and there is no evidence that either detective acted maliciously in the encounter. The later dismissal of the charges against him—for evidentiary reasons—does not *post hoc* render malicious his prosecution for possession of marijuana. There is no genuine issue of fact that the detectives had probable cause to seize Meleika's marijuana and that they acted solely with the intent to bring Meleika to justice. The malicious-prosecution claim is accordingly **DISMISSED**.

### 4. Municipal Liability

Meleika sues the City of Bayonne.[10] For constitutional torts, whether under 42 U.S.C. § 1983 or the analogous provisions of the NJCRA, there is no *respondeat superior* liability. Municipal liability for the acts of employees must be premised on the doctrine of *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978). *See Connick v. Thompson,* 131 S. Ct. 1350, 1358–61 (2011); *Mulholland v. Gov't Cnty. of Berks, Pa.,* 706 F.3d 227, 237 (3d Cir. 2013).[11] A local government unit is liable only to the extent that its own

---

[10] The Bayonne Police Department has already been dismissed as a defendant because it is a department of a city government, not an independent entity that can sue and be sued. (DE 25 at 4 (citing, *inter alia,* N.J. Stat. Ann. § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government"); *Padilla v. Twp. of Cherry Hill,* 110 F. App'x 272, 278 (3d Cir. 2004); *Mitchell v. City of Jersey City,* No. 15-6907, 2016 WL 1381379 at *1 n.1 (D.N.J. Apr. 7, 2016)).

[11] The vehicle for a claim of violation of the State constitution would be the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2. The NJCRA, like Section 1983, does not impose vicarious or *respondeat superior* liability. *See Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229 at *8 (D.N.J. July 15, 2015) ("[B]ecause *respondeat superior* liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that *respondeat superior* liability is not permitted for claims under the New Jersey Constitution and the NJCRA.") (quoting *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012)); *Estate of Dasaro v. County of Monmouth*, No. 14-7773, 2015 WL 5771606 at *5 n.3 (D.N.J. Sept. 30, 2015) (same); *Hudgon v. LaFleur*, No. 07-3626, 2010 WL 2950004

14

policies or practices led to a deprivation of constitutional rights. *Id.* at 694; *see also City of Canton Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990). Thus, a municipality may be liable under § 1983 where the constitutional injury is alleged to have been caused by either a municipal "policy" or "custom." *See Monell*, 436 U.S. at 694.

Policy is made when a "'decisionmaker possess[ing] final authority to establish [local] policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." *Bielevicz v. Dubinion*, 915 F.2d 845, 850 (3d Cir. 2007) (citing *Andrews*, 895 F.2d at 1480); *accord Bryan County v. Brown*, 520 U.S. 397 (1997).

Nor is it sufficient to allege the mere existence of such a policy or custom. *Monell* liability may only be premised on facts establishing "an affirmative link between the [public entity]'s policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 809 (1985).

Meleika has not produced any evidence to substantiate a municipal-liability theory. There is no evidence that the City of Bayonne or the police department had a policy or custom that encouraged arrests or imprisonments without probable cause. Likewise, there is no evidence that the City or the police department furthered a custom or policy of malicious prosecution. Finally, the record does not demonstrate a policy or custom of failure to train or supervise police officers or that such a failure caused a false arrest, false imprisonment, or malicious prosecution. In any event, without an underlying

---

at *7 n.6 (D.N.J. July 22, 2010)("the Court sees no reason not to interpret the NJCRA consistent with *Monell* as precluding municipal liability absent an official pattern or practice.").

15

constitutional violation, Meleika cannot, as a matter of law, establish a claim of municipal liability for such a violation. *See Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 763 (D.N.J. 2016).

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (DE 75) is **GRANTED**; Meleika's motions for summary judgment (DE 83 & DE 90) are **DENIED**; and Meleika's motion for "recusal" to the Third Circuit (DE 91) is administratively terminated.

A separate order will issue.

Dated: May 7, 2020

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**